IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HYDRO NET LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 21-478 (MN) |
| | ) |
| BARRACUDA NETWORKS, INC. | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT &TUNNELL LLP |
|  | Michael Flynn (#5333) |
|  | 1201 North Market Street |
| OF COUNSEL: | P.O. Box 1347 |
|  | Wilmington, DE 19899 |
| Karineh Khachatourian | (302) 658-9200 |
| Nikolaus A. Woloszczuk | mflynn@mnat.com |
| Oren J. Torten | *Attorneys for Defendant* |
| RIMON, P.C. |  |
| 2445 Faber Place, Suite 250 |  |
| Palo Alto, CA 94303 |  |
| (650) 461-4433 |  |

September 17, 2021

## **TABLE OF CONTENTS**

Page

I.   HYDRO MISSTATES THE STANDARDS OF REVIEW ................................................... 1

II.  HYDRO FAILS TO REBUT THAT THE '706 PATENT HAS EXPIRED ......................... 2

III. HYDRO DIRECT INFRINGEMENT CLAIMS FAIL ........................................................ 3

    A. Hydro Fails to Dispute that the Complaint Does Not Plausibly Allege that the "Remote Station" Element is Met ................................................................................. 3

    B. Hydro Fails to Plausibly Allege Divided Infringement ................................................ 3

IV.  INDIRECT INFRINGEMENT AND ENHANCED DAMAGES SHOULD BE DISMISSED FOR LACK OF PRE-SUIT KNOWLEDGE ..................................................... 6

V.   HYDRO FAILED TO PLEAD SPECIFIC INTENT ........................................................... 10

VI.  DISMISSAL SHOULD BE WITH PREJUDICE ................................................................ 10

VII. CONCLUSION .................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AgroFresh Inc. v. Hazel Techs., Inc.*,
  C.A. No. 18-1486-MN, 2019 WL 1859296 (D. Del. Apr. 25, 2019) ........................................2

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)..........................................................................................5, 6

*Atrip v. Ball Corp.*,
  735 Fed. Appx. 708 (Fed Cir. 2018).......................................................................................2

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)..............................................................................................6

*Conley v. Gibson*,
  355 U.S. 41 (1957)..................................................................................................................1

*Foods, LLC v. Hamilton Beach Brands, Inc.*,
  457 F. Supp. 3d 434 (D. Del. 2020).......................................................................................5

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)..............................................................................................7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)..............................................................................................................10

*Hydro Net LLC v. GE MDS, LLC*,
  C.A. No. 21-788-MN (D. Del.).........................................................................................4, 9

*Hydro Net LLC v. KVH Industries, Inc.*,
  C.A. No. 21-480-MN (D. Del.).........................................................................................4, 9

*King Pharms., Inc. v. Teva Pharms. USA*,
  409 F. Supp. 2d 609 (D.N.J. 2006) .......................................................................................2

*McZeal v. Sprint Nextel Corp.*,
  501 F.3d 1354 (Fed. Cir. 2007)..............................................................................................1

*Motiva Patents, LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019)...................................................................................7

*Ricoh Co. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008)..........................................................................................7, 8

*Rovi Corp. v. Hulu, LLC*,
    2012 WL 261982 (D. Del. Jan. 27, 2012) .................................................................................1

*Sapphire Crossing LLC v. Robinhood Markets, Inc.*,
    C.A. No. 18-1717-MN-CJB, 2021 WL 149023 (D. Del. Jan. 15, 2021) ............................. 4, 5

*Sentius Int'l, LLC v. Apple Inc.*,
    2020 WL 6081775 (N.D. Cal. Oct. 15, 2020) ..........................................................................4

*SoftView LLC v. Apple Inc.*,
    2012 WL 3061027 (D. Del. July 26, 2012) .............................................................................9

*Sound View Innovations, LLC v. Facebook, Inc.*,
    204 F. Supp. 3d 655 (D. Del. 2016) .........................................................................................2

*VLSI Tech. LLC v. Intel Corp.*,
    2019 WL 1349468 (D. Del. Mar. 26, 2019) ..........................................................................10

**Rules and Statutes**

35 U.S.C. § 271(c) .............................................................................................................................7

35 U.S.C. § 154(b)(2)(B) ..................................................................................................................2

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................1

Hydro's Opposition confirms that it has not, and cannot, plausibly plead infringement of the expired '706 patent.  Hydro's complaint and opposition suffer from a common fatal flaw—a plaintiff must have some facts before it files a complaint.  It cannot just mimic statutory elements of infringement without more.  Unable to rebut the merits of BNI's Motion, Hydro relies mostly on Fifth Circuit caselaw and would have this Court apply barebones notice-pleading standards long ago abrogated by *Iqbal* and *Twombly*.  BNI's Motion is not "premature" or dependent upon unidentified  "complex technical determinations" that must await resolution only after expensive and unnecessary discovery, claim construction, and expert reports.  D.I. 19 ("Op.") at 1.  Like any plaintiff, Hydro must plead sufficient facts to state a claim that is plausible on its face.  Hydro's cookie-cutter Complaint, filed against multiple defendants across different industries, does not come close to meeting this standard and its claims should be dismissed with prejudice.

I.     **HYDRO MISSTATES THE STANDARDS OF REVIEW**

Struggling to account for its numerous pleading deficiencies, Hydro resorts to misrepresenting the standard for Rule 12(b)(6) motions and the pleading requirement for patent infringement.  First, Hydro contends that motions to dismiss are "disfavored and should rarely be granted."  Op. at 2.  But in support, Hydro cites to old non-patent cases from N. D. Texas, the first of which relied on the "no set of facts" language from *Conley v. Gibson,* 355 U.S. 41 (1957)—which *Twombly* overturned—and the second a pre-*Iqbal/Twombly* case.  *Id.*  Hydro then contends that "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend.  Op. at 3 (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).  But *McZeal* in turn relied on since-abrogated Fed. R. Civ. P. Form 18, and is no longer good law in the wake of *Iqbal*.  *See, e.g., Rovi Corp. v. Hulu, LLC*, 2012 WL 261982, at *2 (D. Del. Jan. 27, 2012) ("The Supreme Court's decision in *Iqbal* requires adherence, and undermines the precedential value of *McZeal*.").  Although a plaintiff is not required to have full patent

infringement contentions in its complaint, it must comply with *Iqbal/Twombly* and plead *facts* that plausibly suggest that the accused product meets the limitations of the asserted claim(s). *See AgroFresh Inc. v. Hazel Techs., Inc.*, C.A. No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019); *see also Atrip v. Ball Corp.*, 735 Fed. Appx. 708, 714 n.4 (Fed Cir. 2018).

## II. HYDRO FAILS TO REBUT THAT THE '706 PATENT HAS EXPIRED

BNI set forth evidence and law demonstrating that the '706 patent expired on January 12, 2021, due to the patentee's filing of a terminal disclaimer during prosecution to overcome a double-patenting rejection. Mot. at 4; *see also* Ex. C (excerpt of June 29, 2006 Response to Office Action at 23-24, requesting acceptance of terminal disclaimer).[1] The effect of the terminal disclaimer is that the '706 patent inherited the expiration date of its parent patent—January 12, 2021—a date that cannot be extended by a patent term adjustment. Hydro does not dispute that there was a terminal disclaimer, and instead merely points to the face of the '706 patent to argue that the patent term extends beyond the terminal disclaimer date. Op. at 7. That is incorrect. The patent term adjustment statute makes clear that the terminal disclaimer controls over any term adjustment. *See* 35 U.S.C. § 154(b)(2)(B); *see also King Pharms., Inc. v. Teva Pharms. USA*, 409 F. Supp. 2d 609, 614 (D.N.J. 2006) ("Section 154(b)(2)(B)'s language is plain and unambiguous: terminally disclaimed patents are barred from obtaining a § 154(b) patent term extension."). Pursuant to the terminal disclaimer, the '706 patent expired on January 12, 2021, the same expiration date as the parent patent, U.S. Patent No. 6,314,126, and any claim for infringement after that must be dismissed. And since Hydro has not plausibly alleged that BNI had knowledge of the '706 patent before its expiration (infra at § IV), all claims requiring pre-suit knowledge must also be dismissed.

---

[1] This Court may properly take judicial notice of the prosecution history of the '706 Patent for purposes of deciding the present motion. *Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 658 (D. Del. 2016)

### III. HYDRO DIRECT INFRINGEMENT CLAIMS FAIL

Hydro's direct infringement claims fail (*see* Mot. at 8-11). As addressed below, Hydro ignored BNI's points almost entirely, tacitly conceding the infirmities of its pleading. Op. at 4-5.

#### A. Hydro Fails to Dispute that the Complaint Does Not Plausibly Allege that the "Remote Station" Element is Met

The Opposition entirely fails to respond to BNI's contention that the complaint failed to allege that any Accused Product practices any of the four limitations that involve some action by a "remote station." *See* Mot. At 10. Not even a conclusory denial. The unavoidable conclusion is that Hydro has no rebuttal and effectively admits that it has not sufficiently alleged that BNI or the Accused Product meet the "remote station" limitations of the asserted claims. This alone is grounds to dismiss *all* of Hydro's direct and indirect infringement claims.

#### B. Hydro Fails to Plausibly Allege Divided Infringement

As set forth in BNI's Motion, the asserted system and method claims of the '706 patent necessarily implicate entities and/or devices beyond BNI and the Accused Product, and Hydro has not plausibly alleged that BNI could be liable under a divided infringement theory. Mot. at 8-10. The patent's claims require a communications system/network which Hydro did not allege is provided entirely by BNI or the Accused Product. Mot. at 8-9. BNI explained that the complaint's allegations (as set forth in the incorporated claim chart) are that the network requires more than just the Accused Product, but rather at least "another product/device to which the accused product can communicate with" "and several base stations [cellular towers]," which are not alleged to be part of the Accused Product. Thus, Hydro's infringement allegations rely on system components which may *communicate* with the Accused Product but are not themselves part of the Accused Product nor are they controlled by BNI. *Id.*

In attempting to respond to this deficiency, Hydro points to its amended conclusory allegations that BNI infringed "through internal testing and usage," which Hydro argues would

3

have required *use* of the base stations that it tacitly acknowledges are neither part of the Accused Product nor controlled by BNI. Op. at 4; *see also* D.I. 14-3 at ¶ 18 (redlined version of FAC showing boilerplate new testing allegations). Notably, Hydro made this same cookie-cutter "testing" allegation in an amended complaint filed the same day in another case before this Court where it was facing a motion to dismiss, *Hydro Net LLC v. KVH Industries, Inc.*, C.A. No. 21-480-MN (D.I. 14-3 at ¶ 18) and yet again in another case before this Court, *Hydro Net LLC v. GE MDS, LLC*, C.A. No. 21-788-MN (D.I. 12 at ¶ 18). Hydro's "cut and paste" pleadings against defendants in diverse industries belies the lack of factual bases for its allegations. Further, Hydro's argument suffers from numerous flaws.

First, the cases Hydro cites on internal testing allegations are easily distinguished. Both involved software and hardware combinations contained within a single device, i.e., the accused systems and methods did not rely on any third-party components or actions, thus, it was plausible that the defendant could have infringed when performing testing/usage of that single device. *See Sapphire Crossing LLC v. Robinhood Markets, Inc.*, No. 18-1717-MN-CJB, 2021 WL 149023, at *2 (D. Del. Jan. 15, 2021) (accused product/method involved only "software that infringes the claims when used with a smartphone to allow a user to scan a receipt" and did not rely on third-party components or actions); *Sentius Int'l, LLC v. Apple Inc.*, 2020 WL 6081775, at *1 (N.D. Cal. Oct. 15, 2020) (accused products were smartphones, laptops and software applications concerning their spellcheck functionality which did not rely on third-party components or actions). Further, in *Sapphire*, the plaintiff attached claim charts showing how users of the defendant's accused mobile application were alleged to have directly infringed the patent on their own, such that "the Court can see how the FAC and its attached claim charts, when read together, set out a plausible ***single actor*** direct infringement scenario as to [defendant's] own internal testing." *Sapphire*, 2021

4

WL 149023, at * 3 (emphasis added). None of those allegations exist here.[2]

In contrast, Hydro fails to explain how BNI's alleged internal usage *necessarily* would have directly infringed the asserted system and method claims, when those claims require third-party components and/or actions such as the third-party base stations. Instead, Hydro's claim chart fails to set forth how a single user (employee or otherwise) of the Accused Product can directly infringe, and primarily relies on citations to third-party technical documentation related to LTE networks rather than BNI manuals or marketing materials. *See, e.g.*, D.I. 14, Ex. 2 at 15 (citing ETSI document). As a result, Hydro has not plausibly alleged that BNI's purported testing of the Accused Product would constitute direct infringement. Indeed, Hydro entirely fails to allege the basic facts required to establish the elements of any divided infringement theory.

Asserted method claim 1 includes a "transmitting" step from a base station [cellular tower] using radio waves, yet Hydro does not allege that BNI operates the base stations and performs the transmitting step. Mot. at 9. As explained in the Motion, this precludes Hydro's claims for infringement of any method claims because "[d]irect infringement of a method claim can only 'occur[] where all steps of [the] claimed method are performed by or [are] attributable to a single entity.'" Mot. at 11, quoting *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 457 F. Supp. 3d 434, 437 (D. Del. 2020) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015). Outside of allegations that (i) another entity was acting as an accused infringer's agent; (ii) the entities formed a joint enterprise; or (iii) the entities had contracted for performance of method steps, the steps can only be attributable to a single entity if "an alleged infringer conditions participation in an activity or receipt of a benefit upon [another's] performance

---

[2] Further, since Hydro is relying solely on BNI's alleged internal use/testing for direct infringement, its damages would need to be strictly limited to those arising from use/testing. *Sapphire*, 2021 WL 149023, at *2 n.3.

of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023. Here, Hydro has not plausibly alleged that the acts of the entity that allegedly performs the base station transmitting steps can be attributed to BNI. Indeed, Hydro has not even alleged *who* that entity even is, nor has Hydro alleged such entity's performance of method steps *should* be attributed to BNI. As a result, even if it is assumed that alleged testing by BNI of the Accused Product were to implicate actions performed by third-party base stations, Hydro still has not plausibly alleged BNI's direct infringement of method claim 1 under *Akamai*.

Similarly, Hydro's conclusory and boilerplate allegations are insufficient to plausibly allege that BNI's purported testing/use of the Accused Product constitutes an infringing making or use of a system under a divided infringement theory. In *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, the Federal Circuit addressed the circumstances under which a single entity may be liable as a direct infringer where, as here, Hydro appears to be contending that the accused "system" uses "elements in the possession of more than one actor" (base stations). 631 F.3d 1279, 1283-84 (Fed. Cir. 2011) (holding that for liability for "use" of a system, that party must "put the invention into service, i.e., control the system as a whole and obtain benefit from it."). Here, the complaint fails to plausibly allege that BNI's purported testing/use of the Accused Product would *necessarily* put into service third-party base stations, that BNI controlled the system as a whole, or that BNI obtained a benefit from the alleged use. Absent factual allegations that could make these determinations plausible, Hydro has not properly alleged that BNI's purported testing/use of the Accused Product constitutes direct infringement of the system claims under *Centillion*.

## IV. INDIRECT INFRINGEMENT AND ENHANCED DAMAGES SHOULD BE DISMISSED FOR LACK OF PRE-SUIT KNOWLEDGE

Hydro does not dispute that properly pled claims for indirect infringement and enhanced damages must allege facts that would plausibly suggest that BNI had *pre-suit* knowledge of the

'706 patent. As an initial matter, Hydro appears to concede that the weight of the case law demonstrates that knowledge of the patent from the original complaint cannot serve as the basis meeting the knowledge requirement. Mot. at 13-14 (collecting cases). Hydro offers no substantive rebuttal to BNI's position or case law.[3] Consequently, Hydro's indirect infringement and enhanced damages claims must be dismissed unless it plausibly alleged facts supporting BNI's pre-suit (and pre-expiration) knowledge of the patent.

Hydro first argues that a defendant's knowledge of the patent can be assumed if the accused product is, or contains, a component that has no substantial non-infringing uses. Op. at 5 (citing FAC at ¶ 44). For this to apply, the complaint must identify that component (or allege that the Accused Product itself *is* a component) and the factual bases for the legal conclusion that it can only infringe, for example, by alleging facts that could support the determination that the component is a "'separate and distinct' feature of a larger product." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010). Consequently, even if Hydro were correct on the law, the Complaint has no well-pled factual basis to support its infringement contentions. Further, Hydro's reliance on *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019), for the premise that knowledge can be presumed, is misplaced as that non-binding decision relies on *dicta* from the Federal Circuit's general discussion of *why* Congress enacted 35 U.S.C. 271(c), and *how* the Supreme Court has interpreted it to impose liability for contributory infringement where only a component of an infringing system is implicated. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) ("[I]t is entirely appropriate to presume that one who sells a product containing *a component that has no substantial noninfringing use* in that product does so

---

[3] Further, Hydro does not dispute that this Court can dismiss its indirect infringement and enhanced damages claims for the pre-suit period. Mot. at 14-15, 18. Hydro also does not dispute that if the direct infringement claims fail, so does indirect infringement. Mot. at 12.

7

with the intent that the component will be used to infringe."). The *Ricoh* court did not even discuss the knowledge requirement for contributory infringement because the defendant did not dispute that it had knowledge of the patents-in-suit. *Id.* at 1342. BNI explained these exact points in its Motion, yet Hydro offers no response. Mot. at 15-16.

Hydro's second argument is that "named inventors on [BNI's] patents have dozens of spread-spectrum patents, the same technology at issue in this case" which "would have brought it in contact with the inventor of the Patent-in-Suit, Donald L. Schilling …." Op. at 6 (citing FAC at ¶ 45(b)). The Complaint, however, alleges only that Mr. Schilling holds "dozens of patents related to CDMA/spread-spectrum technology" and that BNI "should be aware" of his "substantial foundational body of work." FAC at ¶ 45(b). The Court should disregard that argument, as well as attorney argument that BNI has been "prolific" in the "spread-spectrum space" because the Complaint makes no such allegations. Op. at 6. Moreover, Hydro's unsubstantiated attorney argument is factually wrong: BNI has neither any patents nor any products or services directed towards improvements in spread-spectrum networks.

Even putting aside Hydro's misrepresentations of its pleadings regarding BNI's alleged activity in the "spread-spectrum space," Hydro's argument that mere "information and belief" allegations of knowledge gained through "prior art searches and freedom to operate analyses" fails as a matter of law. As BNI explained, "[c]ourts have frequently rejected such attempts to plead the defendant's knowledge based on nothing more than participation in a particular market or area of technology." Mot. at 16 (citing several cases). Hydro failed to dispute BNI's argument or distinguish its cited caselaw. Further, Hydro's "prior art search" and "freedom to operate" allegations are cookie-cutter, entirely duplicative allegations it made against other defendants selling accused products (assorted radios) that are very different than BNI's accused product, a

network appliance that provides and secures virtual private network connections to permit devices connected to an internal network to also connect to the Internet. *See KVH Indus.*, C.A. No. 21-480-MN, D.I. 14-3 at ¶ 45(b); *GE MDS*, C.A. No. 21-788-MN, D.I. 12 at ¶ 45(b). Leveraging the same allegations against diverse accused products only highlights their implausibility.

Hydro's third argument is that even if its "various allegations are not sufficient individually to establish knowledge" the Court should consider the "various allegations" as a whole and find them sufficient. Op. at 6 (citing *SoftView LLC v. Apple Inc.*, 2012 WL 3061027 (D. Del. July 26, 2012)). But as noted above, Hydro has not made "various allegations" that could be viewed as a whole. Rather, it has merely made a single "information and belief" allegation that BNI "must have" come across the patent in the course of unspecified prior art searches and freedom to operate analyses. Further, *Softview* is plainly distinguishable because there the plaintiff made *fact-based allegations* that the defendant: (1) became aware of the patent through a subsidiary which previously cited the published application of the parent of the asserted patent during the prosecution of its own patent; (2) had a business connection with the patent's inventor; and (3) learned of the patent from a business partner that had previously discussed the asserted patent with the plaintiff. *SoftView*, 2012 WL 3061027 at *5-6. Only due to the combination of these three factual allegations did the court find the plaintiff had plausibly alleged pre-suit knowledge. Hydro has made not even one similar fact-based allegation.

Finally, Hydro argues it has sufficiently pled that BNI was willfully blind to the existence of the '706 patent, and that this should be sufficient to meet is burden for pre-suit knowledge. Op. at 7. This argument also fails. Hydro has not pled any *facts* from which it could plausibly be inferred that BNI was willfully blind. "[K]nowledge based on willful blindness exists only where (1) the defendant subjectively believed that there was a high probability that a fact exists and (2)

9

the defendant took deliberate actions to avoid learning of that fact." *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). Hydro merely points to ¶ 45(c) of the FAC, which is nothing more than its own bare assertion that BNI was willfully blind. Op. at 7. Beyond this unadorned legal conclusion the Court may ignore, Hydro resorts again to bare attorney argument that BNI is a "prolific inventor[] in a narrow technological space—spread-spectrum technology" and thus it is "certainly plausible" BNI "would have been willfully blind to have not known of the Patent-in-Suit." BNI is a cybersecurity company, not a telecommunications company, where spread-spectrum technology usually appears. Hydro's allegations have no basis in well-pleaded facts, and its arguments have no basis in the law. The indirect infringement claims should be dismissed.

## V. HYDRO FAILED TO PLEAD SPECIFIC INTENT

Finally, Hydro offers no response to BNI's argument that its generic allegation that BNI sells the Accused Product and distributes "product literature and website materials" without any further factual details was insufficient to plead the specific intent necessary for induced infringement. Mot. at 17 (citing cases). Accordingly, the induced infringement claims may be dismissed on that basis alone.

## VI. DISMISSAL SHOULD BE WITH PREJUDICE

Hydro's claims should be dismissed with prejudice. Amendment would be futile because the patent expired before Hydro filed suit. Similarly, after already having two attempts at pleading its case, there is no reason to believe that Hydro could cure its deficiencies and Hydro offers none. Op. at 8 (requesting leave to amend without explanation).

## VII. CONCLUSION

For the foregoing reasons, BNI respectfully requests that the Court grant its Motion to Dismiss.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Karineh Khachatourian<br>Nikolaus A. Woloszczuk<br>Oren J. Torten<br>RIMON, P.C.<br>2445 Faber Place, Suite 250<br>Palo Alto, CA  94303<br>(650) 461-4433<br><br>September 17, 2021 | MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br><br>*/s/ Michael J. Flynn*<br>_____<br>Michael Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>mflynn@mnat.com<br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 17, 2021, upon the following in the manner indicated:

| | |
|---|---|
| David W. deBruin<br>GAWTHROP GREENWOOD, PC<br>3711 Kennett Pike, Suite 100<br>Wilmington, DE 19807<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)